AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

FILED
MAR 15 2011
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

| United States of America | ) |
|---|---|
| v. | ) |
| VISHAL DASA | ) Case No. |
| | ) 4-11-70271 |
| Defendant(s) | ) |



## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __September 7, 2010__ in the county of __Alameda__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. s 1546(a) | Visa Fraud |

This criminal complaint is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

Approved as to form: _____
HARTLEY M.K. WEST

_____
Complainant's signature

ICE SA Jason Mackey
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/15/11

_____
Judge's signature

City and state: Oakland, CA

Hon. Donna M. Ryu
*Printed name and title*

Document No.
District Court
Criminal Case Processing

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re: VISHAL DASA

### AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Jason Mackey, do swear and affirm as follows:

### I. INTRODUCTION AND PURPOSE FOR AFFIDAVIT

1. I make this affidavit in support of a criminal complaint and summons against Vishal DASA for visa fraud, in violation of Title 18, United States Code, Section 1546(a). The statements contained in this affidavit are based on my experience and training as a Special Agent and the information provided to me by other law enforcement officers. Because this affidavit is submitted for the limited purpose of securing a complaint and summons, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only the facts that I believe are necessary to establish probable cause that DASA violated Title 18, United States Code, Section 1546(a).

### II. AGENT BACKGROUND

2. I have been a Special Agent with the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), or its predecessor agency, the United States Customs Service, since November 2002. Since April 2009, I have been assigned to the Document and Benefit Fraud Task Force for the San Francisco, California, Office of the Special Agent in Charge. Previous assignments include the Joint Terrorism Task Force (2007-09), the Compliance Enforcement Unit (2006-07), the Benefit Fraud Unit (2004-06), and the Contraband Smuggling Group (2002-04).

1

3. Since 2004, I have participated in at least 50 visa fraud investigations, including three involving educational institutions; have interviewed hundreds of aliens suspected of violating United States immigration laws; and have been involved in approximately 50 arrests for student visa violations.

4. In addition to completing the Criminal Investigator Training Program and the Customs Basic Enforcement School at the Federal Law Enforcement Training Center (2003), I have received extensive training in enforcing immigration laws and investigating immigration benefit fraud schemes. Specifically, I have participated in the Customs-Immigration Cross Training Program (2004), ICE's National Security Investigations Western Region Training Conference (2008), and ICE's Document Fraud and Terrorism course (2010). From these trainings, I learned about the common indicators of visa fraud and student visa status violations.

5. I have also discussed this investigation with an ICE adjudicator assigned to the Student Exchange and Visitor Program (SEVP) School Certification Branch, who has been involved in the inspections of at least 27 SEVP-approved schools. From these discussions, I know that all U.S. schools must file a petition and be approved by SEVP before they can sponsor foreign nationals to receive student status to enter and remain in the United States. SEVP approval is contingent upon a petitioning school's agreement to abide by certain regulations that require, among other things, reporting of foreign student residence addresses and failure of foreign students to maintain full courses of study. A school that does not comply with the reporting requirements may have its sponsorship privileges revoked.

6. As a result of this training and experience, I am familiar with the United States' immigration laws and regulations, including those relating to student visas and status violations.

I am aware that an alien who has entered the United States on a valid student visa may become removable if that alien fails to comply with the visa terms. I know that there is a very high demand for student visas, and that some people seek such visas and visa-related documents as a means entering and remaining in the United States, without ever intending to pursue a full course of study. I also know that some schools seek to profit from the demand for student visas by issuing visa-related documents and falsely reporting students' status to DHS in exchange for "tuition" fees.

### III. APPLICABLE LAW

7. Title 18, United States Code, Section 1546(a) makes it a criminal offense to "knowingly forge[] . . . or falsely make[] any . . . document prescribed by statute or regulation for entry into or as evidence of authorized stay . . . in the United States," or to "use[], attempt[] to use, posses[], obtain[], accept[], or receive[]"any such document, "knowing it to be forged . . . or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained." 18 U.S.C. § 1546(a).

8. The Immigration and Nationality Act identifies several categories of foreign nationals who may be admitted to the United States for non-immigrant purposes. *See* 8 U.S.C. § 1101. One such category, designated "F-1," comprises "bona fide student[s]" coming temporarily to study at an approved school. 8 U.S.C. § 1101(a)(15)(F)(i); 8 C.F.R. § 214.1(a)(2). Those entering the United States on an F-1 student visa are admitted for a temporary period called "duration of status," meaning "the time during which an F-1 student is pursuing a full course of study" at an approved school. 8 C.F.R. § 214.2(f)(5)(i). When a student stops pursuing a full course of study, the duration of status ends and the temporary period for which the

3

individual was admitted expires.

8. To enter the United States on a student visa, a foreign national must present a Certificate of Eligibility, also known as a Form I-20, certifying that the student has been accepted for enrollment in a full course of study and signed by a Designated School Official (DSO). 8 C.F.R §§ 214.2(f)(1)(i)(a), 214.3(k). Once a student has been granted F-1 status using this "initial" I-20, DSOs are obligated to report within 21 days, the failure of any student "to maintain status." 8 C.F.R. § 214.3(g)(3)(ii)(A). A "student is considered to be maintaining status if he or she is making normal progress toward completing a course of study." 8 C.F.R. § 214.2(f)(5)(i). Such status is documented through an "active" I-20. Physical attendance is required. *See* 8 C.F.R. § 214.2(f)(6)(i)(G). An approved school is obligated to report "the termination of attendance of each nonimmigrant student." 8 U.S.C. § 1101(a)(15)(F)(i). All such reporting is conducting through a DHS-operated electronic database of non-immigrant aliens' status, known as the Student and Exchange Visitor Information System (SEVIS).

IV. **FACTS ESTABLISHING PROBABLE CAUSE**

9. On September 7, 2010, an ICE Undercover Agent (UCA) entered the office of Tri-Valley University (TVU), located at 405 Boulder Court, Suites 700 and 800, in Pleasanton, California, posing as a prospective foreign student. The UCA was equipped with an audio and video recording device. After entering, the UCA was introduced to Vishal DASA (Date of Birth 11/05/1985), with whom he conversed in Hindi.

10. Upon introducing himself, DASA immediately asked the UCA what his visa status was. The UCA replied that his F-1 visa had expired in 2002 because he never went to school, that he was now "completely out of status," and that he feared being deported. DASA

advised, "So you need some documents, I will prepare some documents for you." DASA then advised the UCA that he would make an I-20 for him, get him admission to TVU, and arrange a work authorization. DASA further advised that there would be a $50 fee for the I-20, and a registration and tuition fee totaling $2800, with the first $1000 installment due immediately. Although the UCA informed DASA that he had only completed through tenth grade in India, DASA informed him that one can receive work authorization if enrolled in a Master's program, and registered him for the Masters of Business Administration (M.B.A.) program. DASA then created an initial I-20 for the UCA in SEVIS, in the name R.B., which the UCA provided. As he was entering information into SEVIS, DASA stated, "It has come. Now you are legal."

11. The UCA inquired where he would take the classes because he was living in New York, would not be able to come to TVU, and does not have internet access in New York. DASA responded, "I will take care of that. . . . There won't be any problem." DASA explained that the UCA would not be able to get As, but could still get Bs.

12. After printing the UCA's I-20, DASA informed the UCA that he would have to return later that same day to have it signed by his "madam." When the UCA returned, DASA greeted him and walked his I-20 to a person later identified as Susan SU (TVU's founder and president). Without asking questions, SU signed the I-20 and handed it back to DASA. DASA walked back to the UCA and handed him the signed I-20. The UCA looked at the I-20, pointed to the signature in the name "Wenchao (Vince) Wang," and asked DASA if that was his "madam." DASA confirmed that it was. The UCA then departed the TVU office with the signed I-20.

13. Later that day, I observed that a record for R.B. had been created in SEVIS,

5

placing him into active student status at TVU. The SEVIS record reflected that R.B. was pursuing a M.B.A. program and residing in Sunnyvale, California. Subsequent SEVIS queries revealed that TVU maintained R.B. in active student status despite the UCA never attending a single class.

14. On January 7, 2011, an ICE agent called the TVU office and spoke to a woman who identified herself as Susan SU. The agent advised SU that he worked for immigration at the John F. Kennedy International Airport in New York and had stopped R.B. attempting to enter the United States from Pakistan. The agent explained that he needed TVU to confirm whether R.B. was a bona fide student and requested a copy of his I-20, a letter of good standing, a copy of his transcripts, and attendance records. Later the same day, the agent received an email from TVU attaching the requested records.

15. On January 18, 2011, ICE officials terminated R.B.'s F-1 status in anticipation of the withdrawal of TVU's certification to admit nonimmigrant students.

## V. CONCLUSION

16. Based on the above information, there is probable cause to believe that on September 7, 2010, in the Northern District of California, Vishal DASA did knowingly and falsely make a Form I-20, which is a document prescribed by statute and regulation for entry into and as evidence of authorized stay in the United States, in violation of Title 18, United States Code, Section 1546(a).

## VI. REQUEST FOR SEALING ORDER

17. The investigation regarding Tri-Valley University, Susan SU, and other subjects is ongoing. Disclosure of this affidavit and the criminal complaint may result in the destruction of

evidence, witness tampering, and/or the flight of TVU student-witnesses. Indeed, several former TVU students who may be potential witnesses have already returned to their native countries. Accordingly, I request that the Court direct the Clerk of the Court to maintain this affidavit and criminal complaint under seal.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

_____
Jason G. Mackey, Special Agent
U.S. Department of Homeland Security
Immigration and Customs Enforcement

Sworn and subscribed to before me this __15th__ day of March, 2011.

_____
HON. DONNA M. RYU
United States Magistrate Judge